**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**GARY NORTHINGTON,**

       **Plaintiff,**                            **CIVIL ACTION NO. 16-cv-12931**

       v.                                 **DISTRICT JUDGE PAUL D. BORMAN**

**BADAWI M. ABDELLATIF,**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**LISA ADRAY, CHARLES ALLEN,**
**RASHED BASHIR, CORIZON**
**HEALTH, INC., CORRECTIONAL**
**MEDICAL SERVICES, TANYA**
**CUNNINGHAM, BOBBY ECHOLS,**
**PATRICK J. GEML, RAMESH**
**KILARU, GARY KIRSTEIN, MIKE**
**MILLETTE, RICHARD PIAZZA,**
**PRISON HEALTH SERVICES,**
**JEFFREY C. STIEVE, EUNICE**
**TAYLOR, HEIDI WASHINGTON,**
**SUSAN WILSON, and DANIEL**
**HEYNS,**

       **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Gary Northington, a prisoner at the G. Robert Cotton Correctional Facility in Jackson, Michigan, filed this *pro se* civil rights matter against a number of employees of the Michigan Department of Corrections and healthcare providers employed by MDOC contractors on August 10, 2016. (Docket no. 1.) In his Amended Complaint, he claims that due to Defendants' failure to provide adequate healthcare and dental care, particularly their refusal to perform allergy tests and isolate him from the identified allergens, he suffers from swollen airways, "Hives, Whole Body Edema, Nerve Damage, Respiratory Failure, Anaphylaxis,

1

pulmonary edema, severe heart failure and sometimes Renal Failure." (Docket no. 13 at 7.) He claims that Defendants' actions violate his rights under "USCA 7, 9, 8, 14, 1." (Docket no. 13-1 at 3.) He asks that Defendants be ordered to perform various medical tests, to provide him with dental implants, and to accommodate his allergies by assigning him to his own cell. He also seeks monetary damages, a declaratory judgment, and "such other relief as appears reasonable and just." (*Id.* at 4.)

Before the Court are MDOC Defendants' Motions to Revoke Plaintiff's *In Forma Pauperis* Status and to Dismiss, or in the Alternative to Sever (docket nos. 42, 56), and Plaintiff's Motion for Leave to File First Amended Motion for Temporary Restraining Order and/or Injunction, with the accompanying Motion for TRO and/or Injunction (docket nos. 62, 63).[1] Plaintiff filed Responses to each of the MDOC Defendants' Motions. (Docket nos. 50, 67.) Defendants Abdellatif, Geml, Millette, Bashir, Kilaru, Wilson and Corizon Health, Inc., filed a Response (docket no. 66) to Plaintiff's Motion for TRO. All pretrial matters have been referred to the undersigned for consideration. (Docket no. 19.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation.

I.   **RECOMMENDATION**

For the reasons that follow, the undersigned recommends that the MDOC Defendants' Motions to Revoke Plaintiff's *In Forma Pauperis* Status and to Dismiss, or in the Alternative to

---

[1] Also before the Court are Plaintiff's Motion to Place Medical Records Under Seal (docket no. 49), Plaintiff's Motion to Extend Time to Serve Summons and Complaint (docket no. 51), and Plaintiff's Motion for Extension of Time to File Response/Reply (docket no. 70) to Defendants' Response to Plaintiff's Motion for TRO. The undersigned will address these motions separately in a concurrently issued opinion and order.

Also pending is the medical defendants' recently filed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (docket no. 69), which has not yet been fully briefed and which the undersigned will address at a later date.

Sever (docket nos. 42, 56) be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's IFP status should not be revoked, but his claims against Defendants Allen and Nichols related to dental care should be severed and dismissed without prejudice. Plaintiff's Motion for Leave to File First Amended Motion for Temporary Restraining Order and/or Injunction (docket no. 62) should be **GRANTED IN PART** and **DENIED IN PART**. It should be **GRANTED** to the extent that Plaintiff asks the Court to consider the First Amended Motion for Temporary Restraining Order (docket no. 63) on the merits, but **DENIED** to the extent that Plaintiff seeks injunctive relief. [2] Plaintiff's First Amended Motion for Temporary Restraining Order (docket no. 63) should be **DENIED**.

## II.   REPORT

### A. Factual Background

In his Amended Complaint, Plaintiff claims that he suffers from a number of medical conditions caused by exposure to unidentified allergens. He asserts that on a daily basis, his "respiratory airways swell," his blood pressure drops, and his "arms and legs get weak and tingly." (Docket no. 13 at 7.) He also claims that he has difficulty sleeping, and "often passes-out." (*Id.* at 8.) More serious issues arise when he is exposed to certain foods and cosmetics. He claims that he suffered "multiple heart attacks" in 2016 as a result of years of untreated symptoms. (*Id.* at 9.) He claims that various MDOC employees at Kinross, Mound, and Macomb prisons have refused to perform allergy tests to specifically identify what causes his attacks, which has led to his prolonged exposure to allergens. Specifically, he claims that in 2009, Defendant Dr. Richard Piazza "said he should issue" a special accommodation for Plaintiff due to his allergies, but that Defendants Corizon Health, Inc., Correctional Medical Services,

---

[2] In this Motion (docket no. 62 at 3), Plaintiff also voluntarily withdrew a number of previously filed motions seeking injunctive relief (docket nos. 8, 10, 15, and 48). *See* text-only order dated March 31, 2017.

3

Nurse Tanya Cunningham, and Prison Health Services would not allow him to do so. (*Id.* at 12.) He alleges that MDOC policy requires "a one-man cell, to have laundry done with hypoallergenic detergent, and/or allergen-free diet" for prisoners with his condition. (*Id.* at 16.)

In 2010, at Mound Prison, Plaintiff claims that he continued to experience allergy-related symptoms and requested testing, but that Defendant Doctor Ramesh Kilaru refused to perform the tests or to isolate Plaintiff in an allergen-free environment. (*Id.* at 14.) He claims that Dr. Kilaru, along with Defendants Corizon Health, Correctional Medical Services, Prison Health Services, and Doctor Jeffrey C. Stieve also refused to test for and treat his skin cancer for a number of years. (*Id.* at 15.) He believes that their delay caused his skin cancer to metastasize, which "caused heart attacks and [deep vein thrombosis]." (*Id.* at 16.)

Plaintiff claims that, for most of 2013, his legs were swollen to three times their normal size, which has caused him to lose 50% of his strength in his legs and forced him to start using a cane. (*Id.* at 18.) He asserts that various medical defendants refused to record his symptoms or downplayed their significance, which "caused Plaintiff years of denied care . . . because . . . nurses say they cannot treat what is not recorded." (*Id.*)

In January 2016, Plaintiff claims that he went into severe anaphylaxis and renal failure, and finally that he has "ever-increasing reaction and injury with each repeated exposure to allergens in all prisons, unresolved life-threatening disease(s), including Anaphylaxis, pulmonary edema, Heart Failure and sometimes Renal Failure, and danger of Lower Leg amputation." (Docket no. 13 at 9.)

Plaintiff also makes allegations regarding his dental care. (Docket no. 13-1 at 1.) He claims that he sent at least three health care requests for an abscessed molar to Defendant dentists Doctor Charles Allen and Doctor Bobby Echols, but his requests were denied or not responded to

4

at all. Eventually, Plaintiff claims, his molar crumbled, which Plaintiff claims caused him to be "severely maimed." He claims that when he attempted to file a grievance regarding his dental care requests, Defendants Allen and Echols falsely denied that Plaintiff had ever requested the dental care. (*Id.*)

Although his complaint is labeled "First Amended Civil Rights Complaint," Plaintiff doesn't allege the violation of any particular statutes except the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961. (Docket no. 13-1 at 3.) He does argue that "the acts and omissions of Defendants" were done "with the intent to deprive Plaintiff of proper medical care and dental care . . . with deliberate indifference to permanent severe pain, suffering and injury, and imminent danger of further severe physical injury and/or premature death to Plaintiff." (*Id.* at 2.) He also argues that Defendants Allen and Echols' actions "were done with the intent to deprive Plaintiff of proper medical care in violation of the Due Process, Equal Protection, and Cruel and/or Unusual Punishment Clauses of the State and Federal Constitutions and to punish and inflict cruel and unusual punishment on Plaintiff." (*Id.* at 3.) He cites "USCA 7, 9, 8, 14, 1." (*Id.*)

**B.  Analysis**

    **1.  Defendants' Motions to Revoke Plaintiff's *In Forma Pauperis* Status and to Dismiss, or in the Alternative to Sever [42, 56]**

On December 22, 2016, Defendants Lisa Adray, Tanya Cunningham, Jeffrey Stieve, Eutrilla Taylor,[3] Heidi Washington, and Daniel Heyns (referred to as "State Defendants" in the Motion) filed a Motion to Revoke Plaintiff's *In Forma Pauperis* Status and to Dismiss, or in the Alternative to Sever. (Docket no. 42.) On February 17, 2017, after having been served,

---

[3] Defendant Taylor's name appears on the Court's docket as "Eunice."

Defendant Gary Kerstein[4] filed his own Motion to Revoke Plaintiff's *In Forma Pauperis* Status and to Dismiss, or in the Alternative to Sever (docket no. 56), which adopts and incorporates the arguments set forth in the State Defendants' first Motion. These Defendants argue that Plaintiff has had "three strikes" against him because he has had three prior civil suits dismissed as frivolous, malicious, or failing to state a claim, and that therefore he should not be allowed to proceed in this lawsuit *in forma pauperis* pursuant to 28 U.S.C. § 1915(g).

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detailed in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Plaintiff has three strikes. *See Northington v. Armstrong*, case no. 1:10-cv-424, docket no. 574 (W.D. Mich. Sept. 27, 2013) (dismissing case for "Plaintiff's continued violations of the Court's orders"); *Northington v. Armstrong*, case no. 1:04-cv-164, docket no. 7 (W.D. Mich. Aug. 5, 2004) (dismissing case for failure to state a claim); *Northington v. Mich. Dep't of Corrections*, case no. 2:01-cv-72428, docket nos. 95, 101 (E.D. Mich. Nov. 20, 2002) (dismissing case for failure to state a claim based on the statute of limitations and failure to exhaust administrative remedies).[5]

Plaintiff nevertheless argues that he has sufficiently pled facts to support that he is under "imminent danger of serious physical injury." (Docket no. 50 at 9.) He argues, as in his Amended Complaint, that Defendants' long-term failure to provide proper medical care,

---

[4] Defendant Kerstein's name appears on the Court's docket as Gary Kirstein.

[5] Plaintiff argues that he is not subject to the three strikes rule because, he argues, "cases filed before the PLRA do not apply to the 3-strikes rule." (Docket no. 50 at 1.) However, each of the cases cited above was filed after the effective date of 28 U.S.C. § 1915(g), and the PLRA, which was April 26, 1996. *See* 28 U.S.C. § 1915; 42 U.S.C. § 1997e (the Prison Litigation Reform Act).

including by failing to identify and isolate him from allergens, caused "life-threatening reactions," including "multiple heart attacks, alleged stroke, Deep Vein Thrombosis (DVT), many Pulmonary Emboli, etc. in 2016." (Docket no. 50 at 10; *see also* docket no. 67 at 2.)

The "imminent danger exception is essentially a pleading requirement subject to the ordinary principles of notice pleading." *Vandiver v. Vasbinder*, 416 Fed. App'x 560, 562 (6th Cir. 2011). Therefore, a plaintiff "need[] only to assert allegations of imminent danger; he need not affirmatively prove those allegations at this stage of litigation." *Tucker v. Pentrich*, 483 Fed. App'x 28, 30 (6th Cir. 2012). Moreover, "a *pro se* plaintiff is entitled to have his complaint liberally construed." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (internal quotation omitted). "[T]he threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 Fed. App'x 796, 797 (6th Cir. 2008) (internal quotation omitted). "[D]istrict courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible.)" *Id.* at 798 (internal quotation omitted).

In *Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580 (6th Cir. 2013), the Sixth Circuit held:

> [A] plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g), as incremental harm that culminates in serious physical injury may present a danger equal to harm that results from an injury that occurs all at once.

*Id.* at 587.

Defendants do not address the significance of this holding to the issue of whether Plaintiff should be allowed to proceed IFP. They simply argue, "Northington's claims arise out

7

of what transpired at three different correctional facilities between 2008 and 2011. Consequently, the imminent danger exception does not apply to this case." (Docket no. 42 at 12.)

The undersigned concludes that Plaintiff has made sufficient allegations that Defendants' failure to treat his chronic illnesses satisfy the imminent-danger exception under § 1915(g). As set forth above, it is clear that Plaintiff does make allegations that he has serious ongoing medical issues which Defendants continue to fail to properly treat, in particular by not determining what is causing his alleged allergic reactions. In his response to Defendants' Motions, Plaintiff attaches a copy of the results of a 2009 physical exam performed by Defendant Dr. Piazza, which states that Plaintiff should ask "to be moved to a room that is free from allergic respiratory triggers for COPD." (Docket no. 50 at 26.) He also attaches a Clinical Progress Note from 2012 in which an MDOC Nurse commented that Plaintiff "looks to be in respiratory distress." (*Id.* at 27.) A 2016 medical document states that testing revealed "extensive DVT" in Plaintiff's lower left leg, and that Plaintiff was diagnosed with pulmonary emboli, COPD, and hypertension, among other conditions. (*Id.* at 28.) "Nurse Protocol" reports document allergic reactions in January 2016. (*Id.* at 36–39.) While there are no reports specifically supporting Plaintiff's claim that he had one or more heart attacks in 2016, there is a note attached to the DVT diagnosis which states that Plaintiff should "follow-up with his cardiologist and with cardiovascular surgery also." (*Id.* at 28.) In other words, Plaintiff shows a history of allergy-related problems, and a recent history of serious medical conditions. Whether Plaintiff will be able to establish that his current medical problems are caused by Defendants' failure to identify his allergens or otherwise provide him with proper medical care remains to be seen. However, in

the undersigned's opinion, Defendants have not shown that Plaintiff's IFP status should be revoked.

The undersigned does agree, however, that severance of Plaintiff's claims related to his dental care is proper.[6]

Under Rule 21, a court "may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. District courts have broad discretion with regard to severance under Rule 21. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159-60 (S.D.N.Y. 2009); *United States v. O'Neil*, 709 F.2d 361, 367 (5th Cir. 1983).

When considering a Rule 21 motion to sever, courts look to Rule 20 for guidance. *Coal. to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality by Any Means Necessary v. Regents of the Univ. of Mich.*, 701 F.3d 466, 489 (6th Cir. 2012) (rev'd on other grounds, 134 S. Ct. 1623 (2014)); *see also In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012); *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). Under Rule 20(a)(2), joinder of Defendants is proper if "(A) any right to relief is asserted against [the defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). But courts also consider "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be

---

[6] The undersigned notes that the MDOC Defendants do not specifically ask for severance of the dental care claims; instead, their Motion focuses solely on severing the various general medical care claims. (*See* docket no. 42 at 15.) As explained in this Report and Recommendation, however, the undersigned finds that all the medical care claims are properly joined, but that the dental care claims should be severed.

9

caused by severance; and (3) whether the claims involve different witnesses and evidence." *See, e.g., Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y.2008) (citations omitted).

The only defendants identified in the dental care claims are Defendants Allen and Nichols, and none of Plaintiff's general medical care claims involve these two defendants. (*See* Docket no. 13-1 at 1.) Plaintiff does not allege that their failure to promptly treat his allegedly abscessed molars contributed to his current medical issues or is related to his allergy problems; rather, he argues that it caused his molars to crumble and caused him to become "maimed." (*Id.*) Plaintiff's other general medical care claims cover a wide span of time and over a dozen defendants, while Plaintiff's dental-care claims are discrete. In his response to Defendants' Motions, Plaintiff himself asserts that his claims arise from "one continuous refusal to treat the same disease from 2006 to 2016," without mention of the dental issues. (Docket no. 50 at 12.) The undersigned therefore concludes that judicial economy would be best served if Plaintiff were required to pursue his dental claims separately, especially considering this litigation is still in the early stages. However, Defendants have not shown that severance of any of Plaintiff's general medical-care claims is appropriate. They all essentially relate to Defendants' alleged failure to test and treat Plaintiff's allergies and other medical conditions, and will therefore involve similar questions of law, and at least some overlapping facts and witnesses.

Accordingly, it is recommended that all of Plaintiff's claims against Defendants Allen and Nichols be severed and dismissed without prejudice.[7] *See , e.g.*, *Prince v. Elum*, case no. 12-cv-15526, docket no. 4 (E.D. Mich. Jan. 14, 2013) (dismissing improperly joined claims without prejudice).

---

[7] The undersigned expresses no opinion regarding whether Plaintiff's dental claims would satisfy the "imminent danger" exception to the three-strikes rule in 28 U.S.C. § 1915(g) if Plaintiff does choose to re-file these claims separately.

10

      **2.**     **Plaintiff's Motion for Leave to File First Amended Motion for Temporary Restraining Order and/or Injunction [62] and First Amended Motion for Temporary Restraining Order and/or Injunction [63]**

On March 13, 2017, Plaintiff filed a First Amended Motion for Temporary Restraining Order and/or Injunction, and a Motion for Leave to file the same. (Docket nos. 62 & 63.) In the Motions, Plaintiff alleges that MDOC officials have damaged or destroyed his footlockers, guitar, and typewriter; misplaced 20 copies of his Amended Complaint while Plaintiff was hospitalized; transferred him to a new prison; and improperly confiscated his writing materials, beard trimmer, and calculator, at least partially in retaliation for the filing of this lawsuit and other grievances. Plaintiff asks the Court to order Defendants to "cease and desist from harassing, intimidating, [or] punishing" Plaintiff, replace Plaintiff's typewriter or provide him with a new laptop, allow Plaintiff to send his guitar to Ohio to have it repaired, and return his beard trimmer and other property. (Docket no. 63 at 13.)

Federal Rule of Civil Procedure 65 authorizes the issuance of preliminary injunctions and temporary restraining orders. The court may issue a temporary restraining order to preserve the status quo until it has had an opportunity to determine whether a preliminary injunction should issue. *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641 (6th Cir. 1993). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). In deciding a motion for a preliminary injunction, the court should consider whether (1) the movant has shown a strong or substantial likelihood of success on the merits; (2) the movant will suffer irreparable injury without the injunction; (3) the preliminary injunction will cause substantial harm to others; and (3) the public interest will be served if the injunction issues. *Id.* (citation omitted). While

these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal. *Id.*; *see also Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

Moreover, "where a prison inmate seeks an order enjoining state prison officials, [courts must] proceed with the utmost care and must recognize the unique nature of the prison setting." *Schuh v. MDOC*, No. 09-982, 2011 WL 7139457, at *3 (W.D. Mich. Nov. 10, 2011) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984)). Courts should give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995). These officials "are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts." *Schuh*, 2011 WL 7139457 at *3 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Bell*, 441 U.S. at 548.

Here, Plaintiff seeks a temporary restraining order and/or a preliminary injunction on "claims" that he does not assert in his Amended Complaint. Indeed, his Amended Complaint (docket no. 13), filed September 9, 2016, makes no mention of any of the items discussed in the Motion. Plaintiff has no likelihood of succeeding on the merits of claims he has not even asserted. *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 299–300 (6th Cir. 2010).[8] Even assuming

---

[8] In *Colvin*, the Sixth Circuit held that:

> [A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint. . . . This is because the purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the

12

that Plaintiff did assert some sort of "retaliation" claim in his Amended Complaint and that Defendants did destroy or confiscate Plaintiff's personal property as Plaintiff alleges in the Motion, there is no evidence (other than Plaintiff's bare assertions) that Defendants' actions were motivated by Plaintiff's pursuit of this lawsuit, and therefore Plaintiff has failed to meet the heavy burden of showing a strong likelihood of success on the merits. The undersigned therefore recommends denying Plaintiff's First Amended Motion for Temporary Restraining Order and/or Injunction. (Docket no. 63.)

### D. Conclusion

For the reasons stated above, the undersigned recommends that the MDOC Defendants' Motions to Revoke Plaintiff's *In Forma Pauperis* Status and to Dismiss, or in the Alternative to Sever (docket nos. 42, 56) be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's IFP status should not be revoked, but his claims against Defendants Allen and Nichols related to dental care should be severed and dismissed without prejudice. Plaintiff's Motion for Leave to File First Amended Motion for Temporary Restraining Order and/or Injunction (docket no. 62) should be **GRANTED IN PART** and **DENIED IN PART**. It should be **GRANTED** to the extent that Plaintiff asks the Court to consider the First Amended Motion for Temporary Restraining Order (docket no. 63) on the merits, but **DENIED** to the extent that Plaintiff seeks injunctive relief. Plaintiff's First Amended Motion for Temporary Restraining Order (docket no. 63) should be **DENIED**.

### III.   NOTICE TO PARTIES REGARDING OBJECTIONS

---

*manner in which the movant contends [he] was or will be harmed through the illegality alleged in the complaint.*"

605 F.3d 282, 299–300 (6th Cir. 2010) (emphasis added).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: April 7, 2017   s/ Mona K. Majzoub
　　　　　　　　　　　 MONA K. MAJZOUB
　　　　　　　　　　　 UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

    I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  April 7, 2017        <u>s/ Lisa C. Bartlett</u>
                                        Case Manager