UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**GARY NORTHINGTON,**

      **Plaintiff,**

**v.**

**DR. BAWADI M. ABDELLATIF, et al.**

      **Defendants.**

_____/

**Case No. 16-cv-12931**

**District Judge Paul D. Borman**

**Magistrate Judge Mona K. Majzoub**

## REPORT AND RECOMMENDATION

Plaintiff Gary Northington, a prisoner at the G. Robert Cotton Correctional Facility in Jackson, Michigan, filed this *pro se* civil rights matter against eighteen Defendants, made up of prison medical providers and employees of the Michigan Department of Corrections ("MDOC"). (Docket no. 13.)  Plaintiff alleges that Defendants violated the Eighth Amendment by denying requested medical care with deliberate indifference to his serious medical needs and seeks damages pursuant to 42 U.S.C. § 1983.  In addition, Plaintiff asserts that Defendants violated the Due Process and Equal Protection provisions of the Fourteenth Amendment, and that certain Defendants are liable as a Racketeer Influenced Corrupt Organization ("RICO") under 18 U.S.C. § 1962(c).

Defendants Corizon Health, Inc. ("Corizon"), Badawi Abdellatif, M.D., Patrick Geml, P.A., Michael Millette, P.A., Rasheed Bashir, M.D., Ramesh Kilaru, M.D., and Susan Wilson, N.P. moved to dismiss the complaint on the basis that Plaintiff's claims (1) are barred by the statute of limitations, (2) are barred by the doctrine of *res judicata*, and (3) fail to state a claim upon which relief may be granted.  (Docket no. 69.)  Defendants Lisa Adray, Tanya Cunningham, Dr. Jeffrey Steive, Eutrilla Taylor, Heidi Washington, Daniel Heyns, and Dr. Gary

Kerstein filed a similar motion to dismiss, with the additional defense that claims against the MDOC defendants in their official capacity must be dismissed under the Eleventh Amendment. (Docket no. 75.)

In the wake of the motions to dismiss, Plaintiff filed a motion to stay the proceedings (docket no. 86), a motion for leave to file an opposition to the Corizon Defendants' reply in support of their motion to dismiss (docket no. 93), and a motion for leave to file a supplemental complaint (docket no. 100).   Thereafter, several Defendants filed a motion to enjoin Plaintiff from filing additional motions or pleadings until the motions to dismiss are resolved (docket no. 102), and Plaintiff filed a motion to enjoin Defendants from altering his medical records (docket no. 105).

This action has been referred to the undersigned for all pretrial proceedings, including a hearing and determination of all non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 19.)

## I.    RECOMMENDATION

The undersigned recommends that Defendants' motions to dismiss Plaintiff's complaint (docket no. 69; docket no. 75) be **GRANTED IN PART** and **DENIED IN PART**.  All claims arising at the Kinross and Mound facilities should be dismissed, but questions of fact remain regarding whether claims arising at Macomb Correctional Facility are barred by the statute of limitations.  The Court should also dismiss Plaintiff's claims against Corizon because Plaintiff fails to plead that Corizon imposes a policy, practice, or custom of unconstitutional conduct. Furthermore, the Court should dismiss Plaintiff's claims under the Fourteenth Amendment, First

2

Amendment, and RICO. Finally, claims against the MDOC defendants in their official capacities should be dismissed except with respect to requests for prospective relief.

With respect to the non-dispositive motions, the Court should **DENY** Plaintiff's motion to stay the proceedings (docket no. 86), and **DENY** Plaintiff's motion for leave to file an opposition to the Corizon Defendants' reply in support of their motion to dismiss (docket no. 93). Plaintiff's motion for leave to file a supplemental complaint (docket no. 100) should be **GRANTED IN PART** and **DENIED IN PART**, permitting additional allegations regarding facts arising after the first amended complaint, but denying Plaintiff's request to add claims against two additional defendants. The Court should **DENY** as moot Plaintiff's motion to force MDOC to mail his motion to supplement (docket no. 101) as well as Defendants' motion to enjoin Plaintiff from filing additional motions or pleadings until the motions to dismiss are resolved (docket no. 102). Finally, the Court should **DENY** Plaintiff's motion to enjoin Defendants from altering his medical records (docket no. 105).

## II. REPORT

### A. Background

This is a civil rights action brought *pro se* under 42 U.S.C. § 1983 by Plaintiff Gary Northington, a prisoner in the custody of the MDOC. (Docket no. 13.) Defendants are employees of the MDOC or of Corizon. Citing several alleged incidents occurring between 2007 and 2016, Plaintiff contends that Defendants denied requested medical care with deliberate indifference to Plaintiff's serious medical needs. (*Id.*) As a preliminary note, this Report and Recommendation necessarily distills Plaintiff's voluminous pleadings in order to address the essence of Plaintiff's claims.

Plaintiff asserts that Defendants (1) refused to perform diagnostic tests to determine the cause of chest pains and apparent allergic reactions and (2) "falsified" Plaintiff's medical records by failing to report symptoms in an effort to avoid paying for treatment. (*Id.*) In proposed supplemental materials, Plaintiff asserts that (1) Corizon has an "unwritten policy" to not record medical symptoms and that (2) Plaintiff suffered heart attacks and strokes in June of 2016 because "Defendants refused to do intermediate specialist and diagnostic care from 2008 to June 2016." (Docket no. 100, pp. 8-10.)

Plaintiff's complaint discloses several prior claims against prison officials and medical providers. (Docket no. 13, pp. 2-3.) Most recently, in 2010, Plaintiff filed a deliberate-indifference claim against 42 individuals, the MDOC, Correctional Medical Services (CMS), Prison Health Services (PHS), and various "unknown parties." *Northington v. Armstrong*, case no. 1:10-cv-424, docket no. 15 (W.D. Mich. July 12, 2010). In support, Plaintiff contended, *inter alia*, that he was denied respiratory care while housed at the Kinross and Mound correctional facilities. *Id.* at 21. The court in that case dismissed Plaintiff's complaint under Rule 41 of the Federal Rules of Civil Procedure based on "continued violations of the Court's orders." *Northington v. Armstrong*, case no. 1:10-cv-424, docket no. 574 (W.D. Mich. September 27, 2013).

On May 22, 2017, the Court dismissed Plaintiff's claims against Defendants Bobby Echols and Charles Allen, which were based on the denial of dental care. (Docket no 82, p. 2.) As of the date of this order, Defendant Richard Piazza has not been served with the complaint. (*See* docket nos. 110, 111.) All other defendants filed motions to dismiss the complaint on the basis that Plaintiff's claims (1) are barred by the statute of limitations, (2) are barred by the

doctrine of *res judicata*, and (3) fail to state a claim upon which relief may be granted.  (Docket nos. 69, 75.)  Plaintiff filed responses to both motions.  (Docket nos. 87, 92.)

### B.      Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (internal quotations and citations omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  To make this determination, a court may apply the following two-part test: (1) "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume [the] veracity [of the

remaining allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

In addressing motions under Rule 12(b)(6), the Sixth Circuit recognizes that, in addition to the allegations of the complaint, the court "may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008).

### C.    Analysis

#### 1.    *Statute of Limitations*

Defendants contend that Plaintiff's § 1983 claims must be dismissed because Plaintiff filed the present complaint more than three years after the alleged incidents forming the basis of the complaint.  (Docket no. 69, p. 3.)

In *Wilson v. Garcia*, 471 U.S. 261, 276–280, 105 S.Ct. 1938, 1947–1950, 85 L.Ed.2d 254 (1985), the Supreme Court held that the appropriate statute of limitations to be applied in all § 1983 actions is the state statute of limitations governing actions for personal injury. Subsequently, in *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986), the Sixth Circuit held that Michigan's three year statute of limitations for personal injury claims governs § 1983 actions when the cause of action arises in Michigan.

The accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007).  The statute of limitations begins to run in a § 1983 action when a plaintiff knows or has reason to know of the act providing the basis for the injury has occurred. *See Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir.2007) (citing *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).  The Supreme Court

has made clear that a "cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391.

A defendant raising the statute of limitations as an affirmative defense has the burden of proving that the action is time-barred. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). To prevail on this affirmative defense, defendants must prove both that: (1) the statute of limitations has run; and (2) that no genuine issue of material fact exists as to when plaintiff's cause of action accrued. *Id.*

Plaintiff asserts that he filed his original complaint on June 11, 2016, given the benefit of the "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 270 (1988) and *Richard v. Ray*, 290 F.3d 810 (6th Cir. 2002), in which the Sixth Circuit extended the *Houston* mailbox rule to "civil complaints filed by *pro se* petitioners incarcerated at the time of filing." (Docket no 85, p. 1.) Plaintiff filed his First Amended Civil Rights Complaint on September 9, 2016. (Docket no. 13.) "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Under this standard, Plaintiff's first amended complaint "relates back" to the occurrences set out in his original complaint. (*See generally* docket nos. 1, 13.) Accordingly, applying Michigan's three-year statute of limitations, the complaint is untimely with respect to any claims that accrued prior to June 11, 2013. The Court will proceed to address the accrual dates of Plaintiff's claims below.

### a. Alleged Fraudulent Concealment

As a preliminary matter, the Court must address Plaintiff's contention that Defendants "fraudulently concealed" elements of Plaintiff's claims, with the implication that the statute of

limitations should not begin to run until January of 2016, when Plaintiff allegedly discovered the fraudulently concealed conditions.

Michigan law recognizes that fraudulent concealment may toll the limitations period:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Mich. Comp. Laws § 600.5855.  Michigan courts require plaintiffs to show that the defendant engaged in affirmative acts or misrepresentations designed to prevent discovery of the claim. *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632, 692 N.W.2d 398, 406–07 (2004); *Draws v. Levin*, 332 Mich. 447, 52 N.W.2d 180, 183 (1952).  Plaintiffs must show "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts."  *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 850–51 (6th Cir. 2006) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)).

Plaintiff's fraudulent-concealment argument has been variously formulated as follows:

- "This new lawsuit amends and supplements [*Northington v. Armstrong*,] 1:10-cv-00424 based on evidence, newly discovered in JANUARY 2016 to MARCH 2016, regarding disease(s) and pathology previously fraudulently concealed by DEFENDANTS."  (Docket no. 13, p. 3.)

- "Claims and facts herein are timely filed upon discovery of facts in JANUARY 2016 and prior fraudulent concealment by DEFENDANTS." (Docket no. 13, p. 7.)

- Plaintiff's "injuries take years to be recognizable . . . when . . . specialist care and diagnostics are denied."  (Docket no. 85, p. 18.)

- Defendants "fraudulently concealed Plaintiff's injuries."  (*Id.* at 20.)

8

- The facts of Plaintiff's food allergies, heart disease and strokes "were not available until Plaintiff was hospitalized in 2016." (*Id.*)

- "Plaintiff's scarred heart and lungs began in April 2008 when Defendants refused to treat a 103.6° fever, strep throat, then walking pneumonia until June 2008. . . . Defendants are liable for fraudulent concealment of disease(s) which they refused to timely test for and treat." (Docket no. 86, p. 15.)

- "Under Michigan law, denial of 'Specialist and diagnostic care' . . . voids 3-year [statute of] limitation." (Docket no. 93, p. 2.)

As demonstrated by these passages, Plaintiff fails to plead facts that would support a claim of fraudulent concealment under Michigan law. To the contrary, Plaintiff's "failure to diagnose" argument implies that neither Plaintiff *nor Defendants* were aware of the alleged disease(s) prior to the eventual diagnoses in 2016. Failure to discover a condition does not amount to fraudulent concealment thereof. Accordingly, the Court will address the accrual dates of Plaintiff's claims without an adjustment for the purported "fraudulent concealment."

b. Claims Arising at Kinross and Mound Facilities

Plaintiff alleges that he was denied medical care from April of 2008 through December of 2009 while he resided at Kinross Correctional Facility. In particular, Plaintiff asserts that:

- Defendants Wilson and Cunningham disregarded requests for medical treatment during a bout of pneumonia in April of 2008.

- Defendant Wilson "falsified medical records" by "refus[ing] to enter Plaintiff's symptoms in the record" and "enter[ing] 'NO' symptoms before seeing Plaintiff 'to save time.'"

- From March of 2009 through December of 2009, Defendants Piazza and Millette refused to issue a special accommodation to isolate Plaintiff from allergens and denied Plaintiff's request to diagnose allergies.

(Docket no. 13, pp. 11-13.)

With respect to Mound Correctional facility, Plaintiff alleges that from February of 2010 to September of 2011:

- Defendants Kilaru, Kirstein and Stieve refused to perform diagnostic tests in order to determine the cause of the symptoms that began while Plaintiff was at Kinross.

- Defendants Kilaru, Kirstein and Stieve refused to biopsy and remove cancer sores on his arm and mouth.

- Defendant Kilaru refused to enter symptoms into the medical record or to issue a special accommodation to isolate Plaintiff from unreasonably high levels of allergens.

- Defendant Kilaru falsely diagnosed Plaintiff as "mentally ill," "OCD," "delusional," and "needing psychotropics."

(Docket no. 13, pp. 14-16.)

As discussed above, the accrual date of a § 1983 cause of action is a question of federal law, which dictates that accrual occurs when the plaintiff has "a complete and present cause of action."  *Wallace*, 549 U.S. at 388 (citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).  For § 1983 actions in the Sixth Circuit, the statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action.  *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).  A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.  *Id.*  Notably, the Supreme Court has observed that a cause of action "'accrues even though the full extent of the injury is not then known or predictable.'"  *Wallace*, 549 U.S. at 391 (quoting 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526–527 (1991)).

Applying this authority to the present matter, the Court should determine that Plaintiff's denial-of-care claims accrued as of the date on which Defendants allegedly denied the requested medical care.  Despite Plaintiff's assertions that the limitations period began upon discovery of additional injuries in 2016, the law is clear that a claim accrues even when the "full extent of the injury is not then known."  *Id.*; *see also Coate v. Montgomery Cty., Kentucky*, 234 F.3d 1267 (6th

10

Cir. 2000) (holding that "[t]he 'event' alerting [the plaintiff] to the fact that she was being denied adequate medical treatment was her knowledge that the barium enema and x-rays ordered by Dr. Humphrey on November 1, 1995 were never administered, not the eventual diagnosis in October 1996 that she had colon cancer"). Accordingly, the Court should grant Defendants' motions to dismiss with respect to all claims that Plaintiff was denied medical care while at Kinross Correctional Facility and Mound Correctional Facility.

Plaintiff asserts that he "discovered" in January 2016 that Defendant Wilson falsified Plaintiff's medical records. (Docket no. 13, ¶ 20.) However, Plaintiff made a substantially similar allegation in connection with the 2010 case, asserting that, "Defendant WILSON falsified medical records to say that Plaintiff had no respiratory problems. When later confronted Wilson said she always made such entries before checking a prisoner, allegedly to save time." *Northington v. Armstrong*, case no. 1:10-cv-424, docket no. 136-1, p. 5 (W.D. Mich. February 16, 2011). Because Plaintiff was aware of the basis for this same allegation in 2011, the Court should find that this claim was filed beyond the limitations period and grant Defendants' motions to dismiss this claim.

c. <u>Claims Arising at Macomb Correctional Facility</u>

Plaintiff alleges that he was denied medical care from November of 2011 through April of 2016 while he was confined at Macomb Correctional Facility. In particular, Plaintiff asserts that:

- Defendants Abdellatif, Adray, Bashir, Geml, Kirstein, Stieve, Taylor and Washington refused to diagnose the cause of Plaintiff's chest pain and shortness of breath.

- Defendants Abdellatif, Adray, Bashir, Geml, Kirstein, Stieve, Taylor and Washington refused to biopsy and remove cancer sores on his arm and mouth.

- Defendants Abdellatif, Adray, Bashir, Geml, Kirstein, Steive, Taylor and Washington refused to issue a special accommodation to isolate Plaintiff from unreasonably high levels of allergens.

- Defendants Abdellatif, Adray and/or Geml falsified Plaintiff's medical records.

- Defendants Abdellatif, Adray, Bashir and Geml forced Plaintiff to eat unreasonably high levels of allergens.

(Docket no. 13, pp. 17-19.)

In proposed supplemental pleadings, Plaintiff further asserts that:

- Defendant Geml directed a nurse to "remove[] COPD from Plaintiff's medical record."

- From May to September of 2013, Defendants Abdellatif, Bashir, and Stieve refused to order specialist and/or diagnostic care to treat a fungal infection in Plaintiff's lower left leg.

- From September of 2013 to October of 2014, Defendants Adray and Taylor "made medical decisions for which they did not have [a] license with intent [to] obstruct[] Plaintiff's attempts to record symptoms."

- From October of 2013 through December of 2014, Defendants Abdellatif, Kirstein and Steive refused to treat severe pain, infection and bleeding in the left side of Plaintiff's head.

- From April to June of 2015, Defendants Abdellatif, Adray, Bashir, and Kirstein falsely recorded that Plaintiff had no food allergies and refused to treat symptoms of such allergies.

- In May through July of 2015, Defendants Abdellatif and Adray refused to diagnose the cause of Plaintiff's lower leg edema and severe pain.

- In January of 2016, Defendants Abdellatif, Adray, Bashir, and Kirstein again refused to diagnose cause of hives, edema, shortness of breath, hypertension and hypotension.

- From March to July of 2016, Defendants Abdellatif, Adray, Bashir and Kirstein refused to record symptoms of Plaintiff's food allergies, including vision defects.

- In March of 2016, Defendant Adray refused to enter Plaintiff's reported symptoms and told a nurse not to record that Plaintiff had a rash and edema.

- In March of 2016, Defendants Abdellatif, Bashir, and Kirstein refused to treat Plaintiff's niacin deficiency that caused hyperlipidemia, leading to coronary blockage and ischemic heart disease.

While it appears that some of these occurrences fall outside of the limitations period, Plaintiff's failure to attach a specific date to several of the allegations significantly impedes the task of determining which claims are time-barred. Defendants concede that at least some portion of the allegations accrued within the limitations period, submitting that "[a] majority of Plaintiff's deliberate indifference claims are barred by the statute of limitations." (Docket no. 69, p. 3.)

As stated above, a defendant raising the statute of limitations has the burden of proving that the action is time-barred, and to establish that no genuine issue of material fact exists as to when plaintiff's cause of action accrued. *See Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). Without additional factual support, the Court is unable to determine which of the claims arising at Macomb Correctional Facility are time-barred. Accordingly, the Court should deny Defendants' motion to dismiss with respect to all claims that Plaintiff was denied medical care while at Macomb Correctional Facility, without prejudice to Defendants' right to raise this defense in a subsequent motion for summary judgment.

2.    *Res Judicata*

Defendants contend that Plaintiff's claims are barred by the doctrine of *res judicata*. (Docket no. 69, p. 23; docket no. 75, p. 11.) In Particular, Defendants contend that Plaintiff's 2010 civil rights action—which stated deliberate-indifference claims against several of the Defendants in this matter—was dismissed on the merits under Rule 41. (Docket no. 69, pp. 10-11.) Defendants further observe that the Sixth Circuit upheld the dismissal because (1) Plaintiff "acted willfully and in bad faith" through his submissions and "pleadings of questionable merit that contain assertions that are often tantamount to harassment," (2) Plaintiff's "overwhelming

13

volume of frivolous pleadings" and his "constant barrage of *ad hominem* attacks" was prejudicial to the Defendants, and (3) Plaintiff was given adequate warning regarding the consequence of dismissal.  (*Id.*)

Because any claim litigated in the 2010 action would necessarily have accrued prior to the commencement of that action, any cause of action subject to *res judicata* would also be subject to dismissal based on the statute of limitations.  Accordingly, although it is clear that several of Plaintiff's claims were dismissed on the merits the 2010 action, a separate analysis of Defendants' *res judicata* defense is not warranted under the circumstances.

> 3.      *Failure to State a Claim*

> a.  Claims against Institutional Defendants

The Corizon Defendants contend that Corizon cannot be held liable under the theory of *respondeat superior*.  (Docket no. 69, p. 31 (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 663 (1978)).)  Defendants assert that in order to state a claim of deliberate indifference against Corizon, Plaintiff must allege that Corizon imposes a policy, practice, or custom of unconstitutional conduct, and must "identify the policy, connect the policy to [Corizon] and show that the particular injury was incurred because of the execution of that policy."  (*Id.* at 32 (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).)

Plaintiff makes several references to an "unwritten custom and practice" to deny care for serious medical needs.  (Docket no. 13, p. 10.)    The vast majority of these allegations simply conclude that Corizon is responsible for the collective actions of individual defendants.  (*See, e.g., id.* at ¶ 13.d (asserting that Corizon has an unwritten custom to "refuse to issue a special accommodation to isolate Plaintiff from unreasonably high levels of allergens").)

In Plaintiff's proposed supplemental pleadings (docket nos. 93, 100), Plaintiff cites a "Corizon/PHS Contract" with the State of Michigan, which under a section titled "Disease Management" provides that "[t]he objective [when treating chronic conditions such as coronary heart disease, kidney failure, hypertension, heart failure, diabetes, asthma, cancer, and depression] is to ease the disease path rather than cure disease." (Docket no. 93, p. 9.) Plaintiff further contends that MDOC nurses told Plaintiff that they "are told not to do anything that has cost" and that "Corizon employees are ordered to not put symptoms in the medical record unless the patient is at the point of imminent death" in order to "stick Medicaid with the costs" of treatment. (Docket no. 100, pp. 7-8.) For the reasons set forth below, this allegation fails to state a claim that Corizon employs a policy of deliberate indifference under the Eighth Amendment.

The Eighth Amendment bars Defendants from unnecessarily and wantonly inflicting pain on Plaintiff through deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference claims are analyzed under a two-part test, with a subjective component and an objective component. *See Miller v. Calhoun Cty.*, 408 F.3d 803, 812–13 (6th Cir. 2005). The objective component of the test requires the existence of a "sufficiently serious" medical need, which is predicated upon the inmate demonstrating that he or she "is incarcerated under conditions imposing a substantial risk of serious harm." (*Id.* (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)).) The subjective component requires a showing that the prison official possessed "a sufficiently culpable state of mind in denying medical care" which must evince "deliberateness tantamount to intent to punish." (*Id.* (citing *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).)

Analyzed under this framework, Plaintiff's contention that Corizon treats chronic conditions in a palliative fashion instead of "cur[ing] the disease" fails to state a claim of deliberate indifference.    Far from evincing an intent to punish inmates, the "Disease Management" policy expressly states that "[i]mproving quality of life and activities of daily living are first and foremost" and aims to "reduc[e] future complications associated with [chronic] diseases." (Docket no. 93, p. 9.)

Accordingly, the Court should find that Plaintiff fails to state a *Monell* claim against Corizon.   In addition, Plaintiff does not dispute that Defendants Correctional Medical Services and Prison Health Services are "Corizon predecessors" (*see* docket no. 69, p. 19).   The Court should dismiss the claims against these entities as well.

### b. Fourteenth Amendment

Defendants assert that Plaintiff fails to state a viable Due Process and/or Equal Protection claim under the Fourteenth Amendment.  (Docket no. 69, p. 32)  In support, Defendants contend that Plaintiff's Fourteenth Amendment claim is "conclusory and fails as a matter of law."

Plaintiff's first amended complaint makes only passing reference to the Fourteenth Amendment, contending that Defendants' alleged denial of medical treatment was "done with the intent to deprive Plaintiff of proper medical care in violation of the Due Process, Equal Protection, and Cruel and/or Unusual Punishment Clauses of the State and Federal Constitutions." (Docket no. 13-1, p. 3.)  As noted by Defendants, Plaintiff fails to plead "that a state actor purposefully discriminated against him because of his membership in a protected class" and fails to substantiate the alleged due process violation.  (*See* docket no. 69, p. 33 (citing *Simpson v. Ameji*, 57 F. App'x 238, 239 (6th Cir. 2003)).)

16

In Plaintiff's response to the Corizon Defendants' motion for summary judgement, Plaintiff cites a Seventh Circuit case for the proposition that "a person can be a member of a class with only one member" and further contends that he "was/is singled-out because his medical care is very expensive [and because] he is elderly and frail." (Docket no. 85, p. 40 (citing *Albright v. Oliver*, 975 F.2d 343, 348 (7th Cir. 1992)).) Even with the addition of these arguments, however, Plaintiff's Fourteenth Amendment claim remains conclusory. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."). Accordingly, the Court should dismiss Plaintiff's Fourteenth Amendment claim.

### c. First Amendment

Defendants contend that "to the extent that Plaintiff claims Defendants are retaliating against him by 'harassing, intimidating, punishing or otherwise interfering with Plaintiff due to his involvement as principal witness at [*sic*] litigant in this case' these allegations should also be dismissed." (Docket no. 69, p. 34.) Defendants assert that Plaintiff fails to plead the elements of a First Amendment retaliation claim, which are: (1) engagement in protected conduct; (2) an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two. (*Id.* (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).)

Plaintiff's first amended complaint makes no mention of the First Amendment or any protected conduct. (*See generally* docket no. 13.) Defendants appear, in an abundance of caution, to be referring to references to retaliatory conduct in Plaintiff's motion for a temporary restraining order, which was denied on May 22, 2017. (Docket nos. 63, 82.) Plaintiff nevertheless responds to Defendant's motion to dismiss the retaliation claim, contending *inter*

*alia* that Defendants "retaliated with 'fraudulent concealment' of not putting Plaintiff's disease, illness and symptoms into his medical record."  (Docket no. 85, p. 41.)  However, the allegations underlying this purported retaliation claim merely repeat the denial-of-care claims, and fail to raise a right to First Amendment relief above the speculative level.

Because the complaint contains no First Amendment claim, and Plaintiff has not advanced any viable reason to grant leave to add such a count, the Court should grant Defendants' motion to dismiss any First Amendment claim that Plaintiff purports to raise in this matter.

### d.  RICO Claim

Defendants contend that Plaintiff fails to state a RICO claim on which relief may be granted.  (Docket no. 69, p. 36.)  Defendants submit that in order to state a claim under 18 U.S.C. § 1962(c), Plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  (*Id.* (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).)  Under this rubric, Defendants assert that Plaintiff advances no factual allegations to show that Defendants are part of an "enterprise" or that any individual Defendant conducted "racketeering activity."  In particular, Defendants assert that the "enterprise" element requires proof of: "(1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged."  (*Id.* at 38 (citing *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 794 (6th Cir. 2012)).)

A "pattern of racketeering activity" requires, at a minimum, two acts of racketeering activity.  18 U.S.C. § 1961(5).  Though two predicate acts are necessary they "are not necessarily

sufficient[;] a plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Ouwinga*, 694 F.3d at 795.

Plaintiff's first amended complaint contains no factual allegations to support any of the above-listed elements.  (*See* Docket no. 13-1, p. 3.)  In response to Defendants' motion to dismiss, Plaintiff contends that Defendants committed predicate acts, including "obstruction of justice by falsely testifying in court under 18 U.S.C. 1503" and "retaliating against a witness or victim under 18 U.S.C. 1513," as well as several additional alleged predicate acts that are conclusory and/or not "racketeering activity" as defined by 18 U.S.C § 1961.  (*See* docket no. 85, p. 43.)  In support of these assertions, Plaintiff contends that Defendant Geml "falsified Plaintiff's medical records to hide symptoms, and falsely testified in federal court [that] Plaintiff did not have COPD" and that non-party Dr. Scott Holmes "without ever seeing Plaintiff, made a false record saying that Plaintiff has no food allergies."  (*Id.* at 45.)  Plaintiff also reiterates his assertion that Defendants fraudulently concealed his conditions by refusing to perform diagnostic and specialist care.  (*Id.* at 46.)

Even considering these additional assertions, Plaintiff fails to plead facts that would raise a right to RICO relief above the speculative level.  As an initial matter, the alleged conduct of Defendant Geml and Dr. Holmes does not appear to fall within the scope of 18 U.S.C. § 1503 (regarding forcefully influencing a juror or court officer)  or § 1513 (retaliation against a witness, victim or informant).  Furthermore, Plaintiff fails to plead facts sufficient to show a "pattern of racketeering activity," i.e., at least two racketeering predicates that are related and that amount to or pose a threat of continued criminal activity.  *See Ouwinga*, 694 F.3d at 795

For these reasons, the Court should dismiss Plaintiff's RICO claim.

e. <u>Claims against MDOC Employees in Official Capacity</u>

The MDOC Defendants contend that the claims against the MDOC individuals being sued in their official capacity must be dismissed as they are the equivalent to suing the State itself, and therefore barred by the Eleventh Amendment. (Docket no. 75 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).)

Plaintiff submits that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at n. 10 (citing *Kentucky v. Graham*, 473 U.S. 159, at 167, n. 14 (1985) and *Ex parte Young*, 209 U.S. 123, 159–160, 28 S.Ct. 441, 453–454, 52 L.Ed. 714 (1908)). Accordingly, Plaintiff contends that "[s]tate immunity does not apply here [because Plaintiff] requested prospective relief." (Docket no. 92, p. 22.)

Plaintiff's first amended complaint requests prospective relief, including "order[ing] Defendants to do tests to determine allergens affecting Plaintiff, to do to do an MRI to determine internal cause of Plaintiff's edema which may be circulatory or other disease, [and] to test Plaintiff lungs for asbestosis a.k.a. mesothelioma" and "order[ing] Defendants to issue [a] special accommodation to isolate [Plaintiff] from unreasonably high levels of allergens which [accommodation] includes a single-man cell."

According to the framework set forth above, Plaintiff's claims against the MDOC Defendants in their official capacities should be dismissed except with respect to requests for prospective relief against such Defendants.

4.      *Ancillary Motions*

a.  Motion to Supplement Complaint

Plaintiff requests leave to file a "supplemental complaint" in order to include new claims that arose after the date of Plaintiff's first amended complaint.  (Docket no. 100.)

On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  Fed. R. Civ. P. 15(d).  The court may permit supplementation even though the original pleading is defective in stating a claim or defense.  *Id.*  The court may order that the opposing party plead to the supplemental pleading within a specified time.  *Id.*  A party may amend its pleading only with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  The court should freely give leave when justice so requires.  *Id.*  Such leave should be granted in the absence of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Upon review of the motion, the proposed supplemental complaint primarily adds factual allegations regarding "Plaintiff ha[ving] multiple heart attacks and strokes in June through August of 2016."   To the extent that these allegations arise after the date of the first amended complaint, Plaintiff's motion to supplement the complaint should be granted.

To the extent that the proposed supplemental complaint seeks to add claims against proposed additional defendants Richard D. Russell and Michael A. Trouten, the request to amend/supplement should be denied.  Plaintiff fails to justify the delay in adding Russell and Trouten as defendants, especially given that (1) Russell was a defendant in the 2010 case (s*ee*

21

*Northington v. Armstrong*, case no. 1:10-cv-424, docket no. 15 (W.D. Mich. July 12, 2010)) and (2) Plaintiff contends that he informed Russell of Trouten's conduct "more than 30 times . . . since 2013" (docket no. 100, p. 21).

b. Motion to Stay

Plaintiff requests the Court to stay these proceedings and issue relief from the judgment against him in the 2010 case, *Northington v. Armstrong*. (Docket no. 86.)  Plaintiff asserts that the pleadings and conduct giving rise to the dismissal of the 2010 action resulted from serious medical symptoms.  (*Id.*)  Rule 60(b)(1) of the Federal Rules of Civil Procedure provides that relief from a final judgment, order, or proceeding may be granted for "mistake, inadvertence, surprise, or excusable neglect."  Relief under Rule 60(b) ordinarily is obtained by motion in the court that rendered the judgment.  *See* Wright & Miller, Federal Practice, § 2865.

In this case, Plaintiff presents no persuasive reason for this Court to reconsider the judgment of the Western District Court in the 2010 case.  That court is far more familiar with its order of dismissal and with the circumstances that allegedly provide grounds for relief from the judgment.  Accordingly, the Court should deny Plaintiff's motion for relief from the judgment in the 2010 case.

In addition, the Court should deny Plaintiff's request to stay these proceedings.  Plaintiff contends that "in the alternative, . . . a stay of proceedings should be ordered until the [Western District and Sixth Circuit] decide [Plaintiff's] motions for relief from judgment."  (Docket no. 86, p. 3.)  However, as discussed in connection with the statute-of-limitations and *res-judicata* defenses above, none of the claims in this matter would be affected by the resolution of a Rule 60 motion before the Western District.

22

### c.  Motion for Leave to File Sur-Reply

Plaintiff requests leave to file a brief in response to Defendants' reply in support of their motion to dismiss.  (Docket no. 93.)  Plaintiff contends that Defendants are not permitted to file a reply in support of their motion to dismiss.  Because a reply brief is allowed under Rule 7 of the Local Rules of the United States District Court for the Eastern District of Michigan, the Court should deny Plaintiff's motion for leave to respond to Defendants' reply.

### d.  Motion to Preclude Additional Pleadings

The Corizon Defendants request the Court to "enjoin Plaintiff from filing any additional motions or pleadings until Defendants' motion to dismiss is resolved."  (Docket no. 102.)  Because Defendants motions to dismissed are addressed in this Report and Recommendation, the Court should deny Defendants' motion as moot.

### e.  Motion to Force Mailing

Plaintiff filed a motion requesting the Court to "order MDOC to mail his 25 July 2017 Motion."  (Docket no. 101.)  The July 25, 2017 motion to which Plaintiff refers is Plaintiff's motion for leave to file a supplemental complaint (docket no. 100), discussed above.  Accordingly, the Court should deny Plaintiff's motion as moot.

### f.  Motion to Enjoin Defendants from Altering Medical Records

Plaintiff requests the Court to "enjoin Corizon Defendants and Staff from altering Plaintiff's Medical Records" pursuant to Rule 65 of the Federal Rules of Civil Procedure. (Docket no. 105.)  As Defendants note, this is already a requirement for the Corizon Defendants as licensed medical professionals.  Rule 65(d) provides that every order granting an injunction must set forth the reasons for its issuance, be specific in terms, and describe in reasonable detail the act or acts sought to be restrained.  A permanent "obey the law" injunction is too broad to

satisfy these criteria. *See E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984).

Because the injunction requested by Plaintiff would be redundant of laws applicable to Defendants, and fails to describe in reasonable detail the act or acts sought to be restrained, the Court should deny Plaintiff's motion.

### C.     Conclusion

For the reasons stated herein, the undersigned recommends that Defendants' motions to dismiss Plaintiff's complaint (docket no. 69; docket no. 75) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- All claims arising at the Kinross and Mound facilities should be dismissed as barred by the statute of limitations.  Accordingly, Defendants Cunningham, Kilaru, Millette, Piazza, and Wilson should be dismissed entirely from these proceedings.

- Questions of fact remain regarding whether claims arising at Macomb Correctional Facility are barred by the statute of limitations.

- All claims against Corizon, Prison Health Services, and Correctional Medical Services should be dismissed because Plaintiff fails to state a *Monell* claim.

- The Court should dismiss Plaintiff's claims under the Fourteenth Amendment, First Amendment, and RICO.

- The claims against the MDOC defendants in their official capacities should be dismissed except with respect to requests for prospective relief.

With respect to ancillary motions:

- The Court should **DENY** Plaintiff's motion to stay the proceedings (docket no. 86).

- The Court should **DENY** Plaintiff's motion for leave to file an opposition to the Corizon Defendants' reply in support of their motion to dismiss (docket no. 93).

- Plaintiff's motion for leave to file a supplemental complaint (docket no. 100) should be **GRANTED IN PART** and **DENIED IN PART**, permitting additional allegations regarding facts arising after the first amended complaint, but denying Plaintiff's request to add claims against two additional defendants.

- ▪ The Court should **DENY** as moot Plaintiff's motion to force MDOC to mail his motion to supplement (docket no. 101).

- ▪ The Court should **DENY** as moot Defendants' motion to enjoin Plaintiff from filing additional motions or pleadings until the motions to dismiss are resolved (docket no. 102).

- ▪ The Court should **DENY** Plaintiff's motion to enjoin Defendants from altering his medical records (docket no. 105).

## III.  NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: December 1, 2017          **s/ Mona K. Majzoub**
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

    I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: December 1, 2017          s/ Leanne Hosking
                                 Case Manager