UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY NORTHINGTON,

Case No. 16-12931

Plaintiff,

Paul D. Borman
v.                                          United States District Judge

BADAWI M. ABDELLATIF, *et al.*,

Mona K. Majzoub
United States Magistrate Judge

Defendants.
_____/

## OPINION AND ORDER ADOPTING THE MAJORITY OF THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS (ECF NO. 112)

Magistrate Judge Mona K. Majzoub set forth the following relevant background of this case in her Report and Recommendation ("**R&R**") filed December 1, 2017:

> Plaintiff Gary Northington, a prisoner at the G. Robert Cotton Correctional Facility in Jackson, Michigan, filed this *pro se* civil rights matter against eighteen Defendants, made up of prison medical providers and employees of the Michigan Department of Corrections ("MDOC"). (Docket no. 13.) Plaintiff alleges that Defendants violated the Eighth Amendment by denying requested medical care with deliberate indifference to his serious medical needs and seeks damages pursuant to 42 U.S.C. § 1983. In addition, Plaintiff asserts that Defendants violated the Due Process and Equal Protection provisions of the Fourteenth Amendment, and that certain Defendants are liable as a Racketeer Influenced Corrupt Organization ("RICO") under 18 U.S.C. § 1962(c).

Defendants Corizon Health, Inc. ("Corizon"), Badawi Abdellatif, M.D., Patrick Geml, P.A., Michael Millette, P.A., Rasheed Bashir, M.D., Ramesh Kilaru, M.D., and Susan Wilson, N.P. moved to dismiss the complaint on the basis that Plaintiff's claims (1) are barred by the statute of limitations, (2) are barred by the doctrine of *res judicata*, and (3) fail to state a claim upon which relief may be granted. (Docket no. 69.) Defendants Lisa Adray, Tanya Cunningham, Dr. Jeffrey Steive, Eutrilla Taylor, Heidi Washington, Daniel Heyns, and Dr. Gary Kerstein filed a similar motion to dismiss, with the additional defense that claims against the MDOC defendants in their official capacity must be dismissed under the Eleventh Amendment. (Docket no. 75.)

In the wake of the motions to dismiss, Plaintiff filed a motion to stay the proceedings (docket no. 86), a motion for leave to file an opposition to the Corizon Defendants' reply in support of their motion to dismiss (docket no. 93), and a motion for leave to file a supplemental complaint (docket no. 100). Thereafter, several Defendants filed a motion to enjoin Plaintiff from filing additional motions or pleadings until the motions to dismiss are resolved (docket no. 102), and Plaintiff filed a motion to enjoin Defendants from altering his medical records (docket no. 105).

(ECF No. 112, R&R at 1-2, Pg ID 1176-77.)

The Magistrate Judge recommended that "Defendants' motions to dismiss Plaintiff's complaint (docket no. 69; docket no. 75) be **GRANTED IN PART** and **DENIED IN PART**. All claims arising at the Kinross and Mound facilities should be dismissed, but questions of fact remain regarding whether claims arising at Macomb Correctional Facility are barred by the statute of limitations." (R&R at 2, Pg ID 1177.) The Magistrate Judge also recommended that the Court "dismiss Plaintiff's claims against Corizon because Plaintiff fails to plead that Corizon

imposes a policy, practice, or custom of unconstitutional conduct." (*Id.*) The Magistrate Judge also recommended that the Court "dismiss Plaintiff's claims under the Fourteenth Amendment, First Amendment, and RICO." (*Id.* at 2-3, Pg ID 1177-78.) The Magistrate Judge also recommended that the Court dismiss Plaintiff's "claims against the MDOC defendants in their official capacities . . . except with respect to requests for prospective relief." (*Id.* at 3, Pg ID 1178.)

With respect to the non-dispositive motions, the Magistrate Judge recommended that the Court "**DENY** Plaintiff's motion to stay the proceedings (docket no. 86), and **DENY** Plaintiff's motion for leave to file an opposition to the Corizon Defendants' reply in support of their motion to dismiss (docket no. 93)." (*Id.*) Further, the Magistrate Judge recommended that "Plaintiff's motion for leave to file a supplemental complaint (docket no. 100) . . . be **GRANTED IN PART** and **DENIED IN PART**, permitting additional allegations regarding facts arising after the first amended complaint, but denying Plaintiff's request to add claims against two additional defendants," and that the Court "**DENY** as moot Plaintiff's motion to force MDOC to mail his motion to supplement (docket no. 101) as well as Defendants' motion to enjoin Plaintiff from filing additional motions or pleadings until the motions to dismiss are resolved (docket no. 102)." (*Id.*) Finally, the Magistrate Judge recommended that the Court "**DENY** Plaintiff's motion to enjoin Defendants from altering his medical records (docket no. 105)." (*Id.*)

# I.  BACKGROUND

## A.  General Procedural Background

Thereafter, the Magistrate Judge accurately summarized this case:

> This is a civil rights action brought *pro se* under 42 U.S.C. § 1983 by Plaintiff Gary Northington, a prisoner in the custody of the [Michigan Department of Corrections ("**MDOC**")]. Defendants are employees of the MDOC or of Corizon. Citing several alleged incidents occurring between 2007 and 2016, Plaintiff contends that Defendants denied requested medical care with deliberate indifference to Plaintiff's serious medical needs. As a preliminary note, this Report and Recommendation necessarily distills Plaintiff's voluminous pleadings in order to address the essence of Plaintiff's claims.
>
> Plaintiff asserts that Defendants (1) refused to perform diagnostic tests to determine the cause of chest pains and apparent allergic reactions and (2) "falsified" Plaintiff's medical records by failing to report symptoms in an effort to avoid paying for treatment. In proposed supplemental materials, Plaintiff asserts that (1) Corizon has an "unwritten policy" to not record medical symptoms and that (2) Plaintiff suffered heart attacks and strokes in June of 2016 because "Defendants refused to do intermediate specialist and diagnostic care from 2008 to June 2016." (Docket no. 100, pp. 8-10.)

(R&R at 3-4, Pg ID 1178-79 (internal citations omitted).)

The Magistrate Judge addressed a total of eight motions in this R&R. First among these were two Motions to Dismiss filed by the Defendants in this action, who argued that Plaintiff's claims are barred by the applicable statute of limitations, barred by the doctrine of *res judicata*, insufficiently pled under Rule 12(b)(6), and (with regard to certain Defendants) barred by the Eleventh Amendment. (ECF Nos.

69, 75.) After Defendants moved to dismiss, Plaintiff filed four motions between

June and August of 2017:

- a Motion to Stay Proceedings and/or Motion for Relief from Judgment (ECF No. 86), seeking relief from the judgment entered against Plaintiff in *Northington v. Armstrong*, Civil Case No. 10-424 (W.D. Mich. 2010), or in the alternative, a stay of the instant proceedings pending the resolution of the motion for relief from judgment that Plaintiff has already filed in that case;

- a Motion for Leave to File Opposition to Corizon Defendants' Reply (ECF No. 93), seeking the Court's leave to file a sur-reply brief to one of the reply briefs filed by Defendants in support of one of their Motions to Dismiss;

- a Motion for Leave to File Supplemental Complaint (ECF No. 100), seeking the Court's leave to amend Plaintiff's operative complaint to add certain newly arisen claims and additional defendants; and

- a Motion to Order MDOC to Mail [Plaintiff's] 25 July 2017 Motion (ECF No. 101), seeking an order requiring MDOC to send Plaintiff's Motion for Leave to File Supplemental Complaint (ECF No. 100) to this Court.

On September 15, 2017, Defendants filed a Motion to Enjoin Plaintiff from

Filing Additional Motions or Pleadings until Defendants' Motion to Dismiss is

Resolved. (ECF No. 102.) Then, on October 2, 2017, Plaintiff filed a Motion to

Enjoin Defendants from Altering Medical Records (ECF No. 105), asserting that

Defendants had tampered with his medical records in a way that is material to this

case, and seeking an injunction against such tampering.

**B.     December 1, 2017 Report and Recommendation**

The Magistrate Judge analyzed all eight motions in the R&R issued on December 1, 2017. (ECF No. 112, R&R.) As summarized below, the Magistrate Judge concluded that Defendants' Motions to Dismiss (ECF Nos. 69, 75) should be granted in part and denied in part, that Plaintiff's Motion for Leave to File Supplemental Complaint (ECF No. 100) should be granted in part and denied in part, and that all of the other pending Motions should be either denied as moot or denied on the merits.

**1. Defendants' Motions to Dismiss (ECF Nos. 69, 75)**

The Magistrate Judge began her evaluation of Defendants' two Motions to Dismiss by analyzing Defendants' timeliness arguments, and found: (1) that Plaintiffs' claims are subject to Michigan's three-year statute of limitations for personal injury actions; (2) that the statute of limitations as to each claim began to run when Plaintiff knew or had reason to know that "the act providing the basis for the injury [had] occurred"; (3) that because Plaintiff filed the original complaint in this action on June 11, 2016, the statute of limitations bars any claims that accrued prior to June 11, 2013, absent some tolling of the limitations period; and (4) that Plaintiff has pled no facts that would support fraudulent concealment as a basis for tolling the limitations period. (R&R at 6-9, Pg ID 1181-84.) The Magistrate Judge

thus concluded that Plaintiff's claims of denial of medical care when he was located at the Kinross and Mound Correctional Facilities are time-barred because they accrued prior to June 11, 2013. (*Id.* at 9-11, Pg ID 1184-86.)

At the same time, however, the Magistrate Judge found that as regards Plaintiff's claims that arose when he was located at the Macomb Correctional Facility—some of which were alleged in Plaintiff's First Amended Complaint,[1] and some of which were alleged in Plaintiff's proposed amendments to it—it appears (and Defendants concede) that at least some of those claims are alleged to have accrued after June 11, 2013. And although the Magistrate Judge noted that Plaintiff's failure to attach specific dates to some of those allegations "significantly impedes the task of determining which claims are time-barred," she also observed that Defendants ultimately bore the burden of proof on the issue, and therefore recommended that this Court "deny Defendants' motion to dismiss with respect to all claims that Plaintiff was denied medical care while at Macomb Correctional Facility, without prejudice to Defendants' right to raise this defense in a subsequent motion for summary judgment." (*Id.* at 11-13, Pg ID 1186-88.)

---

[1] Although Plaintiff filed this lawsuit on August 10, 2016, he subsequently amended his complaint on September 9, 2016. (ECF No. 13, Am. Compl.) The First Amended Complaint remains the operative complaint in this action.

As to Defendants' argument that some of Plaintiff's claims are barred by *res judicata* because they were dismissed on the merits in Plaintiff's 2010 lawsuit in the Western District of Michigan, *Northington v. Armstrong*, Civil Case No. 10-424, ECF Nos. 561, 574 (W.D. Mich. 2010), the Magistrate Judge determined that because any such claims would necessarily have accrued before June 11, 2013, "a separate analysis of Defendants' *res judicata* defense is not warranted under the circumstances." (*Id.* at 13-14, Pg ID 1188-89.)

The Magistrate Judge then turned to Defendants' arguments that Plaintiff has failed to state a cognizable legal claim under Rule 12(b)(6). First, the Magistrate Judge agreed with Defendants that the three institutional Defendants in this action— Corizon Health, Inc. ("**Corizon**"), as well as its "predecessors" Correctional Medical Services ("**CMS**") and Prison Health Services ("**PHS**")—"cannot be held liable under the theory of *respondeat superior*," and that Plaintiff instead must "must allege that Corizon imposes a policy, practice, or custom of unconstitutional conduct, and must 'identify the policy, connect the policy to [Corizon] and show that the particular injury was incurred because of the execution of that policy.'" (R&R at 14, Pg ID 1189 (quoting ECF No. 69 at 15, Pg ID 585 (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)))).) The Magistrate Judge found that neither the First Amended Complaint nor Plaintiff's proposed amended pleadings alleges a policy, practice, or custom of these institutional Defendants that would

support an Eighth Amendment claim, and concluded that for that reason, Plaintiff has failed to state a claim against Corizon, CMS, or PHS. (*Id.* at 14-16, Pg ID 1189-91.)

Second, the Magistrate Judge found that Plaintiff has failed to state a viable claim under the Due Process and Equal Protection Clauses of the Fourteenth Amendment because he "fails to plead that a state actor purposefully discriminated against him because of his membership in a protected class and fails to substantiate the alleged due process violation," and because Plaintiff's Fourteenth Amendment claim as pled is otherwise conclusory. (*Id.* at 16-17, Pg ID 1191-92.)

Third, the Magistrate Judge addressed Defendants' argument that Plaintiff has not stated a First Amendment retaliation claim, noting that while the pleadings make no express reference to the First Amendment or any conduct protected under it, "Defendants appear, in an abundance of caution, to be referring to references to retaliatory conduct in Plaintiff's motion for a temporary restraining order, which was denied on May 22, 2017." (*Id.* at 17, Pg ID 1192 (citing ECF Nos. 63, 82).) Plaintiff responded to this argument by Defendants (despite not having expressly pled a First Amendment retaliation claim), asserting that Defendants had in fact retaliated against him by omitting material information from his medical records, but the Magistrate Judge concluded that "the allegations underlying this purported retaliation claim merely repeat the denial-of-care claims, and fail to raise a right to

First Amendment relief above the speculative level." (*Id.* at 17-18, Pg ID 1192-93.)

Fourth, the Magistrate Judge recommended that this Court dismiss Plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), 18 U.S.C. § 1962(c), because Plaintiff has made no non-speculative factual allegations that would support any of the elements of such a claim: namely, "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." (*Id.* at 18, Pg ID 1193 (quoting ECF No. 69 at 21, Pg ID 590 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985))).)

Finally, the Magistrate Judge analyzed Defendants' argument that Plaintiff's claims against MDOC employees in their official capacities must be dismissed as barred by the Eleventh Amendment. On this issue, the Magistrate Judge agreed with Plaintiff's contention that state officials can be sued in their official capacity for prospective injunctive relief, since "official-capacity actions for prospective relief are not treated as actions against the State." (*Id.* at 20, Pg ID 1195 (quotation marks omitted) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).) The Magistrate Judge found that the First Amended Complaint

> requests prospective relief, including "order[ing] Defendants to do tests to determine allergens affecting Plaintiff, to do to do an MRI to determine internal cause of Plaintiff's edema which may be circulatory or other disease, [and] to test Plaintiff lungs for asbestosis a.k.a. mesothelioma" and "order[ing] Defendants to issue [a] special accommodation to isolate [Plaintiff] from unreasonably high levels of allergens which [accommodation] includes a single-man cell."

(*Id.* (quoting Am. Compl. at 24, Pg ID 112).) Accordingly, the Magistrate Judge determined that "Plaintiff's claims against the MDOC Defendants in their official capacities should be dismissed except with respect to requests for prospective relief against such Defendants." (*Id.*) In essence Plaintiff seeks, via prospective relief, to have the Court act as a medical expert and order continuing medical testing, and special accommodations, in response to his continuing "rolling" requests for special medical treatment.

## 2. Plaintiff's Motion to Enjoin Defendants from Altering Medical Records (ECF No. 105)

The Magistrate Judge further recommended that this Court deny Plaintiff's Motion to Enjoin Defendants from Altering Medical Records (ECF No. 105), explaining that

> [a]s Defendants note, this is already a requirement for the Corizon Defendants as licensed medical professionals. [Federal Rule of Civil Procedure] 65(d) provides that every order granting an injunction must set forth the reasons for its issuance, be specific in terms, and describe in reasonable detail the act or acts sought to be restrained. A permanent "obey the law" injunction is too broad to satisfy these criteria. *See E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984).
>
> Because the injunction requested by Plaintiff would be redundant of laws applicable to Defendants, and fails to describe in reasonable detail the act or acts sought to be restrained, the Court should deny Plaintiff's motion.

(R&R at 23-24, Pg ID 1198-99.)

### 3. Other Ancillary Motions (ECF Nos. 86, 93, 100, 101, 102, 105)

The Magistrate Judge also evaluated the other five pending non-dispositive Motions, beginning with Plaintiff's Motion for Leave to File Supplemental Complaint (ECF No. 100). Construing Plaintiff's Motion as a motion for leave to amend his complaint under Federal Rule of Civil Procedure 15, and noting Rule 15's directive that courts "should freely give leave [to amend a pleading] when justice so requires," the Magistrate Judge recommended that this Court grant Plaintiff's Motion to the extent that he seeks to add factual allegations that "arise after the date of the first amended complaint." (R&R at 21, Pg ID 1196.) At the same time, the Magistrate Judge recommended that this Court deny Plaintiff's Motion "[t]o the extent that the proposed supplemental complaint seeks to add claims against proposed additional defendants Richard D. Russell and Michael A. Trouten," finding that Plaintiff had failed to "justify the delay in adding Russell and Trouten as defendants, especially given that (1) Russell was a defendant in the 2010 case and (2) Plaintiff contends that he informed Russell of Trouten's conduct "more than 30 times . . . since 2013." (*Id.* (internal citation omitted) (quoting ECF No. 100 at 17, Pg ID 1013).)

The Magistrate Judge then recommended that the remaining ancillary motions be denied, either on mootness grounds or on the merits.

First, the Magistrate Judge recommended that Plaintiff's Motion to Stay Proceedings and/or Motion for Relief from Judgment (ECF No. 86) be denied, finding that Plaintiff has offered "no persuasive reason" for this Court to reconsider the decision of the U.S. District Court for the Western District of Michigan in the 2010 case that Plaintiff's Motion refers to, and that a stay of this action pending the resolution of a similar motion that Plaintiff has filed in that case is not warranted because none of the claims in this action would be affected by the resolution of that motion. (R&R at 22, Pg ID 1197.)

Second, the Magistrate Judge recommended that this Court deny Plaintiff's Motion for Leave to File Opposition to Corizon Defendants' Reply (ECF No. 93), because that Motion was premised on an erroneous argument that the reply brief Plaintiff sought to file an opposition to had been unauthorized, when in fact it was permitted under the local rules. (R&R at 23, Pg ID 1198.)

Lastly, the Magistrate Judge recommended that this Court deny as moot Defendants' motion to enjoin Plaintiff from filing additional motions or pleadings pending the adjudication of Defendants' Motions to Dismiss (*see* ECF No. 102), and also that this Court deny as moot Plaintiff's request that the Court order MDOC to mail Plaintiff's Motion for Leave to File Supplemental Complaint to this Court (*see* ECF No. 101). (R&R at 23, Pg ID 1198.)

Plaintiff filed Objections to the R&R on December 13, 2017. (ECF No. 117, Pl.'s Obj.) Defendants filed a Response to Plaintiff's Objections on December 27, 2017 (ECF No. 119, Defs.' Resp.), and Plaintiff filed a Reply on January 10, 2018. (ECF No. 120, Pl.'s Reply.)

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks omitted). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Likewise, an objection that does nothing more than disagree with a magistrate judge's determination "without explaining the source of the error" is not a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932

F.2d 505, 509 (6th Cir. 1991).

## III.    DISCUSSION

Plaintiff has raised five objections, each of which is addressed to a different aspect of the December 1, 2017 Report and Recommendation. For the reasons that follow, the Court OVERRULES Plaintiff's objections.

### A.    Objection 1

Plaintiff's first objection is that the Magistrate Judge erred in recommending the denial of his Motion to Enjoin Defendants from Altering Medical Records (ECF No. 105). The Magistrate Judge concluded that the requested injunction would do no more than require Defendants to comply with legal obligations that already exist. (R&R at 23-24, Pg ID 1198-99.) Plaintiff characterizes his requested injunction as narrow, and argues that Defendants' "deletion of permanent malady(s) are used to deny Plaintiff treatment for the maladies in question, to torture him with severe pain, and to defame/destroy his 'relative position' before a trial on [the] merits. This is a Defense Tactic to beat Plaintiff into submission through physical and mental abuse." (Pl.'s Obj. at 1-2, Pg ID 1212-13.) Plaintiff also cites *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004), arguing that like the defendants in that case, Defendants in this case "attempt[] to avoid paying damages by falsifying records." (Pl.'s Reply at 1-2, Pg ID 1233-34.)

As a general rule, a permanent injunction that does not "impose[] any unique obligations on the defendants" and "'does no more than require the [defendants] to obey the law'" is not proper. *Youngblood v. Dalzell*, 925 F.2d 954, 962 (6th Cir. 1991) (quoting *Keyes v. Denver School Dist. No. 1*, 895 F.2d 659, 668–69 (10th Cir. 1990)); *see also E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984). As the Magistrate Judge observed, Defendants are already obligated as medical professionals to preserve Plaintiff's medical records. (*See* R&R at 23-24, Pg ID 1198-99.) Apart from that, Defendants are required by federal procedural law to preserve any of Plaintiff's medical records that are specifically material to this litigation. *See John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("[I]t is beyond question that a party to civil litigation has a duty to preserve relevant information . . . when that party 'has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation.'") (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). Indeed, courts have relied on this principle to deny requests for injunctive relief very similar to Plaintiff's request here. *See, e.g., Brian Courtney v. Prison Health Servs.*, No. 10-CV-14123, 2011 WL 1527971, at *1 (E.D. Mich. Apr. 22, 2011) ("[O]rdering Defendants to refrain from tampering with Plaintiff's medical records would be nothing more than an injunction ordering Defendants to 'obey the law,'

because federal evidentiary rules already impose on Defendants the duty to preserve evidence relative to Plaintiff's claims. Since this requirement to follow the federal rules already exists, an injunction would add no additional obligation. Therefore, the 'obey the law' injunction requested by Plaintiff, if issued, would be null and void.").

Further, Plaintiff's reliance on *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004), is unavailing. In *Woodward*, the Seventh Circuit upheld a jury's award of punitive damages against CMS—a healthcare-services provider that is also a named Defendant in this case—because there was "ample evidence for the jury to conclude that CMS was deliberately indifferent to the risk of suicide within the jail" that it serviced, including evidence that CMS condoned a routine practice of "refus[ing] to refer ill patients to the hospital in order to save money." Even if *Woodward* bore some factual similarity to this case, the fact remains that Plaintiff has provided no non-speculative evidence of a routine practice of destruction of records that would warrant an exception to the general rule against broad "obey the law" injunctions. *See Perez v. Ohio Bell Tel. Co.*, 655 F. App'x 404, 413 (6th Cir. 2016) (upholding the denial of a "request for a broad injunction prohibiting [the defendant] from any future violations" of a federal statute where the movant had offered no non-conclusory evidence "supporting his claim for such a sweeping injunctive order").

In short, Plaintiff has offered no persuasive reason for this Court to find that the Magistrate Judge's denial of his request for injunctive relief was in error. Accordingly, the Court overrules Plaintiff's first objection.

## B.    Objection 2

Plaintiff's second objection is that the Magistrate Judge erred in finding that Plaintiff has not plausibly alleged facts sufficient to support a finding of fraudulent concealment, as would be required to toll the statute of limitations as to any of Plaintiff's claims that arose prior to June 11, 2013. In particular, Plaintiff takes issue with the Magistrate Judge's statement that "[f]ailure to discover a condition does not amount to fraudulent concealment thereof" (R&R at 9, Pg ID 1184), and argues that he has alleged that Defendants refused his requests to administer diagnostic tests in response to particular symptoms—actions on Defendants' part which were "not passive but [were] active 'fraudulent concealment.'" Pl.'s Obj. at 2, Pg ID 1213.

The Court finds that this argument lacks merit. Michigan law is clear that to toll the applicable statute of limitations for fraudulent concealment, a plaintiff "must prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery. Mere silence is insufficient." *Sills v. Oakland Gen. Hosp.*, 220 Mich. App. 303, 310 (1996) (citing *Buszek v. Harper Hosp.*, 116 Mich. App. 650, 654 (1982)). For this reason, Michigan courts have

repeatedly held that "[a] misdiagnosis is not an affirmative act to conceal a claim." *Id. See also Dixon v. Ambani*, No. 256292, 2005 WL 3116525, at *3 (Mich. Ct. App. Nov. 22, 2005) ("[T]his Court has determined that, although misdiagnosis might show negligence, it does not amount to fraudulent concealment.") (citing *Sills*, 220 Mich. App. at 310); *Clark v. Martin*, No. 233739, 2002 WL 31953821, at *2 (Mich. Ct. App. Dec. 13, 2002) ("Misdiagnosis may be negligence, but it is not fraudulent concealment.") (citing *Sills*, 220 Mich. App. at 310). Plaintiff attempts to draw a distinction between a misdiagnosis and a *refusal* to diagnose, but given the fraudulent concealment statute's central requirement that the plaintiff show a subsequent affirmative action designed to conceal the plaintiff's claim, this is a distinction without a difference. Moreover, Plaintiff has cited no case law supporting such a distinction in fraudulent concealment doctrine. A health care provider's failure to administer diagnostic tests in response to a patient's symptoms might give rise to a legally actionable claim in some circumstances, but there is no support in the case law for the proposition that such conduct also constitutes affirmative fraudulent concealment of the same claim.

Plaintiff also cites several pages of his medical records that he had attached as an exhibit to his response brief in opposition to Defendants' Motions to Dismiss, and argues that those pages "prove[] Defendants diagnosed Plaintiff with Cardiovascular Disease in 2006 but never did diagnostics to determine cause until

Plaintiff was hospitalized in 2016." (Pl.'s Obj. at 3, Pg ID 1214 (citing ECF No. 85 Ex. C, Pg ID 771-77).) Contrary to Plaintiff's assertion, however, those documents do not prove that Defendants diagnosed Plaintiff with heart disease in 2006: the records from 2006 (and indeed all of the records Plaintiff cites that are dated prior to 2016) set forth medical diagnostic data such as blood pressure and peak respiratory flow rate, but they do not contain anything approximating a diagnosis of heart disease prior to 2016. Even if these records demonstrate that Defendants had diagnosed Plaintiff with *symptoms* associated with heart disease in 2006 (and it is not clear that they show even that much), this does not lend any support to Plaintiff's argument that Defendants' subsequent refusal to administer tests that would have properly diagnosed him constituted "affirmative acts or misrepresentations that were designed to prevent subsequent discovery" of his Eighth Amendment claim. *Sills*, 220 Mich. App. at 310.

Accordingly, the Court overrules Plaintiff's second objection.

## C.    Objection 3

For his third objection, Plaintiff incorporates his second objection "but relative to Macomb Defendants." (Pl.'s Obj. at 4, Pg ID 1215.) Plaintiff also asserts that the R&R "does not address the Plaintiff's severe physical injuries stated in paragraph 2 of page 3 herein and in the Complaint (Pg ID 106), and page 12 (¶ 42) of Doc #100 (Supplemental Complaint)." (*Id.*)

To the extent that this objection merely incorporates Plaintiff's second objection by reference, it is overruled for the same reasons that the Court overruled Plaintiff's second objection, *supra*.

In arguing that the R&R "does not address the Plaintiff's severe physical injuries stated in paragraph 2 of page 3" (*id.*), Plaintiff refers to an earlier paragraph in his Objections in which Plaintiff asserts his argument (also discussed above) that Defendants diagnosed him with cardiovascular disease in 2006, and further states that "[d]oing diagnostics prior to 2014 would have prevented the severe physical injury to Plaintiff's Lungs, Heart, Eyes, Legs, Brain, Left Arm and other organs that occurred in 2015 and 2016." (Pl.'s Obj. at 3, Pg ID 1214 (citations omitted).) The other citations in Plaintiff's third objection are to a page in the First Amended Complaint and a paragraph in Plaintiff's proposed amended complaint that collectively refer to events that Plaintiff alleges occurred in 2013 and in 2016. To whatever extent the Magistrate Judge failed to address the injuries alleged in any of these portions of Plaintiff's filings, it was not a material omission, as none of them contain allegations that any Defendants committed any affirmative acts of concealment designed to prevent discovery of a legal claim, as Plaintiff must allege in order to justify tolling the statute of limitations. Accordingly, the Court overrules Plaintiff's third objection.

**D.    Objection 4**

Plaintiff's fourth objection addresses the Magistrate Judge's determination that Plaintiff has failed to state an Eighth Amendment claim against Corizon, CMS, and PHS because he has not alleged the existence of a policy, practice, or custom of unconstitutional conduct. The Court finds that this objection lacks merit as well.

As the Magistrate Judge recognized, Plaintiff's claims against Corizon, CMS, and PHS are legally grounded in *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), in which the Supreme Court recognized that municipal governments could be liable under 42 U.S.C. § 1983 for constitutional violations in certain circumstances. Importantly, however, a government defendant (or, as here, a private entity defendant serving a government function[2]) "cannot be held liable under § 1983 simply because one of its employees violated the plaintiff's constitutional rights. In other words, § 1983 does not impose *respondeat superior* liability . . . ." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 946 (6th Cir. 2017) (internal citations omitted) (citing *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005)). Instead, "the plaintiff must prove that the constitutional deprivation occurred as a result of an

---

[2] Although *Monell* and many later decisions implementing it addressed municipal liability specifically, it is now well-established that § 1983 liability under *Monell* can also attach to "a private entity that contracts to perform traditional state functions." *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). The parties do not dispute that *Monell* applies to Corizon, CMS, and PHS in this case.

official custom or policy of the municipality." *Id.* An unwritten or informal practice can be a basis for liability under § 1983 and *Monell*, provided that it amounts to "a pervasive custom or practice" of which the defendant's policymakers "know or should know," or is otherwise "attributable to" the defendant. *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (internal quotation marks omitted) (quoting *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994) and *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)). To survive a motion to dismiss, a *Monell* claim "must include adequate allegations '(1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen.'" *Gavitt v. Born*, 835 F.3d 623, 648 (6th Cir. 2016) (quoting *Bright v. Gallia Cty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014)).

In the R&R, the Magistrate Judge found that most of Plaintiff's allegations relating to a custom, policy, or practice of Corizon or its predecessors "simply conclude that Corizon is responsible for the collective actions of individual defendants." (R&R at 14, Pg ID 1189). The Magistrate Judge further summarized Plaintiff's allegations as follows:

> In Plaintiff's proposed supplemental pleadings (docket nos. 93, 100), Plaintiff cites a "Corizon/PHS Contract" with the State of Michigan, which under a section titled "Disease Management" provides that "[t]he objective [when treating chronic conditions such as coronary heart disease, kidney failure, hypertension, heart failure, diabetes, asthma,

cancer, and depression] is to ease the disease path rather than cure disease." (Docket no. 93, p. 9.) Plaintiff further contends that MDOC nurses told Plaintiff that they "are told not to do anything that has cost" and that "Corizon employees are ordered to not put symptoms in the medical record unless the patient is at the point of imminent death" in order to "stick Medicaid with the costs" of treatment. (Docket no. 100, pp. 7-8.)

(R&R at 15, Pg ID 1190.) The Magistrate Judge then found that the "Corizon/PHS Contract" which Plaintiff had quoted (and attached as an exhibit to his filings regarding the instant Motions) does not satisfy the test applicable to deliberate-indifference claims under the Eighth Amendment:

> Deliberate indifference claims are analyzed under a two-part test, with a subjective component and an objective component. *See Miller v. Calhoun Cty.*, 408 F.3d 803, 812–13 (6th Cir. 2005). The objective component of the test requires the existence of a "sufficiently serious" medical need, which is predicated upon the inmate demonstrating that he or she "is incarcerated under conditions imposing a substantial risk of serious harm." (*Id.* (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)).) The subjective component requires a showing that the prison official possessed "a sufficiently culpable state of mind in denying medical care" which must evince "deliberateness tantamount to intent to punish." (*Id.* (citing *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).)

> Analyzed under this framework, Plaintiff's contention that Corizon treats chronic conditions in a palliative fashion instead of "cur[ing] the disease" fails to state a claim of deliberate indifference. Far from evincing an intent to punish inmates, the "Disease Management" policy expressly states that "[i]mproving quality of life and activities of daily living are first and foremost" and aims to "reduc[e] future complications associated with [chronic] diseases." (Docket no. 93, p. 9.)

24

> Accordingly, the Court should find that Plaintiff fails to state a *Monell* claim against Corizon.

(R&R at 15-16, Pg ID 1190-91.) This Court agrees with the Magistrate Judge's finding that the "Corizon/PHS Contract" does not constitute a custom, policy, or practice that satisfies the two-part deliberate-indifference standard articulated by the Sixth Circuit in *Miller*.

Moreover, the Court finds that Plaintiff has not alleged adequately the existence of an unwritten custom or practice on Corizon's part that violated his constitutional right to adequate medical care. To do so, Plaintiff would have to make plausible factual allegations which, if assumed at this stage to be true, demonstrate that he suffered constitutional violations as a direct result of a custom or practice "so persistent and widespread as to practically have the force of law." *D'Ambrosio*, 747 F.3d at 386. More than that, Plaintiff

> would have to allege (1) "a clear and persistent" pattern of unconstitutional conduct by [Corizon] employees; (2) [Corizon's] "notice or constructive notice" of the unconstitutional conduct; (3) [Corizon's] "tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction"; and (4) that the policy of inaction was the "moving force" of the constitutional deprivation....

*Winkler v. Madison Cty.*, No. 17-6073, 2018 WL 3121233, at *16 (6th Cir. June 26, 2018) (quoting *D'Ambrosio*, 747 F.3d at 387-88). In essence, Plaintiff claims that

because Defendants did not practice medicine as he wanted them to on each and every claim, that must have been pursuant to an unwritten policy.

Plaintiff has not met his burden. The theory that underlies Plaintiff's Corizon-related allegations in the First Amended Complaint and the proposed supplemental pleadings—and which Plaintiff advances again in his objections here—is that Corizon had a custom or practice of refusing to provide medical care in certain circumstances to cut costs, to defraud the government, or both. (*See*, *e.g.*, ECF No. 100 at Pg ID 999 ("Defendant CORIZON (f.k.a. CMS/PHS) has unwritten custom, policy and/or practice to not record medical symptoms to avoid paying for care . . . ."); *id.* at Pg ID 1000 ("[Corizon] subordinates, under custom, policy and practice, fraudulently conceal a patient's symptoms until at point of Imminent Death so they can stick Medicaid with the costs.").) Even so, Plaintiff has not made sufficient plausible allegations for this theory of Plaintiff's Eighth Amendment claim to survive Defendants' Motions to Dismiss. Many of Plaintiff's allegations concerning this issue, both in the First Amended Complaint and in his proposed supplemental pleading, are merely conclusory statements that Corizon had such a custom or practice, like those quoted above. Of the allegations that do contain at least some factual matter, many are nonetheless to vague and unspecific to support Plaintiff's claim. (*See*, *e.g.*, Am. Compl. ¶ 14, Pg ID 98 ("From APRIL 2008 to present, [Defendants] admitted having said customs and practices, based on cost and

profiteering rather than serious medical need.").) Of the allegations that *do* contain some specific factual matter, several are ambiguous as to whether they occurred before or after the statute of limitations cutoff (June 11, 2013) described above. (*See*, *e.g.*, Am. Compl. ¶¶ 56-57, Pg ID 106 ("In JANUARY to AUGUST of 2013, DEFENDANT ABDELLATIF continually and falsely wrote in the Medical Record that Plaintiff's swollen legs were 'getting better'.").) And once the allegations that are conclusory, vague, or ambiguous as to time are winnowed out, the allegations that remain do not amount to plausible allegations that Corizon had any custom or practice of unconstitutionally denying medical care—let alone a pervasive pattern of such conduct that affected inmates other than Plaintiff himself. More than this is required to support a deliberate-indifference claim under *Monell*. *See Winkler*, 2018 WL 3121233, at *16 (explaining that evidence of a county's denial of medical care to only one detainee "cannot establish that the County had a custom of deliberate indifference to the serious healthcare needs of all the inmates incarcerated at the Detention Center," since "[a] plaintiff 'cannot rely solely on a single instance' to prove the existence of an unconstitutional custom") (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005)).

For these reasons, the Court overrules Plaintiff's fourth objection.

**E.     Objection 5**

Finally, Plaintiff's fifth objection is to the Magistrate Judge's determination that Plaintiff has failed to state a claim for violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. This objection is rejected.

As the Magistrate Judge correctly observed, the First Amended Complaint "makes only passing reference to the Fourteenth Amendment, contending that Defendants' alleged denial of medical treatment was 'done with the intent to deprive Plaintiff of proper medical care in violation of the Due Process, Equal Protection, and Cruel and/or Unusual Punishment Clauses of the State and Federal Constitutions.'" (R&R at 16, Pg ID 1191 (quoting Am. Compl. ¶ 86, Pg ID 111).) In his Objections, Plaintiff argues that MDOC's failure to provide special accommodations for his "severe allergic reactions to airborne respiratory triggers for [chronic obstructive pulmonary disease] caused by . . . lotions and soaps," and in particular MDOC's failure to protect him from other prisoners who attempt to purposefully induce such allergic reactions, constitutes a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. (Pl.'s Obj. at 5, Pg ID 1216.)

Plaintiff's argument is largely unsupported, as the two legal authorities that Plaintiff cites are irrelevant. Plaintiff makes a general citation to the Americans with

Disabilities Act ("**ADA**"), 42 U.S.C. § 12101 *et seq.*, but this citation does not support his argument in favor of a Fourteenth Amendment Equal Protection claim under 42 U.S.C. § 1983, and Plaintiff has not, in any case, asserted an ADA claim in any of his pleadings. Plaintiff also summarily cites *Helling v. McKinney*, 509 U.S. 25 (1993), but *Helling* concerned Eighth Amendment claims, and the decision makes no reference to the Fourteenth Amendment or the Equal Protection Clause. *Helling* therefore has no relevance to the question of whether Plaintiff has pled a Fourteenth Amendment claim.

Plaintiff has cited no legal authority or factual basis that would support a finding that he has adequately pled an Equal Protection claim under the Fourteenth Amendment and 42 U.S.C. § 1983. For that reason, the Court overrules Plaintiff's fifth objection.

## IV.   CONCLUSION

For the reasons set forth above, the Court hereby ADOPTS the Magistrate Judge's December 1, 2017 Report and Recommendation in full, except for the ruling permitting Plaintiff to amend his Complaint yet again, and file a second amended complaint, which the Court DENIES. Consistently with the Report and Recommendation, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motions to Dismiss. (ECF Nos. 69, 75.) Specifically, the Court adopts the following findings of the Magistrate Judge:

- All claims arising at the Kinross and Mound facilities are dismissed as barred by the statute of limitations. Accordingly, Defendants Cunningham, Kilaru, Millette, Piazza, and Wilson are dismissed entirely from these proceedings.

- Questions of material fact remain regarding whether claims arising at Macomb Correctional Facility are barred by the statute of limitations.

- All claims against Corizon, Prison Health Services, and Correctional Medical Services are dismissed because Plaintiff fails to state a *Monell* claim.

- Plaintiff's claims under the Fourteenth Amendment, First Amendment, and RICO are dismissed.

- The claims against the MDOC defendants in their official capacities are dismissed, except as to any of Plaintiff's allegations seeking non-frivolous prospective injunctive relief.

Further, as to the other pending motions addressed by the Magistrate Judge in the December 1, 2017 Report and Recommendation, the Court hereby:

- DENIES Plaintiff's Motion to Stay Proceedings and/or Motion for Relief from Judgment (ECF No. 86);

- DENIES Plaintiff's Motion for Leave to File Opposition to Corizon Defendants' Reply (ECF No. 93)

- DENIES AS MOOT Plaintiff's Motion to Order MDOC to Mail His 25 July 2017 Motion (ECF No. 101);

- DENIES AS MOOT Defendants' Motion to Enjoin Plaintiff from Filing Additional Motions or Pleadings Until Defendants' Motion to Dismiss is Resolved (ECF No. 102);

- DENIES Plaintiff's request to amend his already amended "First Amended Civil Rights Complaint." Justice does not require yet another amendment. Fed. R. Civ. P. 15(a)(2).

- DENIES Plaintiff's Motion to Enjoin Defendants from Altering Medical

Records (ECF No. 105).

IT IS SO ORDERED.[3]

------------------

[3] Plaintiff's First Amended Civil Rights Complaint in the instant case (ECF No. 13, Am. Compl.), which lists, on pages 2 and 3, previous lawsuits filed by Plaintiff in the Eastern and Western Districts of Michigan (without mentioning in which District the case was filed), lists, *inter alia*, "B6. *Northington v. Armstrong*, W.D.MI 1:10-CV-00424." (Am. Compl. at 2-3, Pg ID 90-91.)

Thereafter, Plaintiff's First Amended Civil Rights Complaint in this instant Eastern District case ties this case to the Western District *Armstrong* case:

> 5. This new lawsuit amends and supplements 1:10-CV-00424, [W.D.MI 2013] based on evidence newly discovered in January 2016 to March 2016, regarding disease(s) and pathology previously fraudulently concealed by Defendants. MCL 600.5851, 5855. There is no statute of limitations for ongoing fraud.

(Am. Compl. at 3, ¶ B6.5, Pg ID 91.)

Plaintiff states on Page 3, ¶ B7.d of this instant amended Complaint:

> d. None of aforesaid cases were dismissed as frivolous and vexatious, as best Plaintiff recalls.

In fact *Northington v. Armstrong* was dismissed with prejudice by U.S. District Judge Janet Neff on September 27, 2013 based on being frivolous and vexatious:

> Plaintiff's obstinance, excessive and frivolous litigious conduct . . . [o]ver the course of nearly three-and-a-half years, Plaintiff has refused to accept the Court's rulings, consuming an inordinate amount of the Court's time and resources in addressing repeated and duplicative appeals, objections, and motions for rehearing or reconsideration, a tactic well-familiar to both the Magistrate Judge and the undersigned. . . .

> Plaintiff's objection advances no meritorious claim of error in the Report and Recommendation. . . . Plaintiff's 35-page objection and exhibits are a continuation of the unacceptable conduct exemplified in filings that have led to the recommended dismissal of this case. Plaintiff's attempt to explain his conduct in this case as a result of cognitive dysfunction and a complication of his medical condition is unavailing.

*Northington v. Armstrong*, Civil Case No. 10-00424, ECF No. 574 at 1-2, Pg ID 6571-72 (W.D. Mich. 2010). Thus, Plaintiff states that the instant case "amends and supplements" the Western District case that was dismissed with prejudice, and has

Dated:  August 3, 2018                    s/Paul D. Borman
                                          Paul D. Borman
                                          United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 3, 2018.

                                          s/Deborah Tofil
                                          Deborah Tofil
                                          Case Manager

---

already supplemented his initial complaint with a First Amended Complaint. Justice does not require further amendments.